AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

| | | | |
|---|---|---|---|
| In the Matter of the Search of | ) | | |
| | ) | Case No. | 4:21 MJ 8586 SRW |
| INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT debo__103 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK, INC. | ) ) ) ) | | SIGNED AND SUBMITTED TO THE COURT FOR FILING BY RELIABLE ELECTRONIC MEANS |

## APPLICATION FOR A SEARCH WARRANT

I, SA Sean Becker, ATF _____, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

SEE ATTACHMENT A

located in the ____NORTHERN____ District of ____CALIFORNIA____, there is now concealed

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1), | Felon in possession of a firearm; |
| 21 U.S.C. § 841(a)(1); | Possession with intent to distribute marijuana; |
| 18 U.S.C. §924(c) | Possession of a firearm in furtherance of a drug trafficking crime |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the following is true and correct.

_____
*Applicant's signature*

Sean Becker
Special Agent, ATF
*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: ____December 3, 2021____

City and state: ____St. Louis, MO____

_____
*Judge's signature*

Honorable Stephen R. Welby, U.S. Magistrate Judge
*Printed name and title*

AUSA:  C. Ryan Finlen, #6305918(IL)

## <u>ATTACHMENT A</u>

**Property to Be Searched**

This warrant applies to information associated with Instagram account **debo__103** (active on, but not limited to, December 2, 2021) (the "Account"), that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by Facebook, Inc. ("Facebook")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Facebook, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) [[on December 2, 2021 (reference # 6578115)]], Facebook is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.    All business records and subscriber information, in any form kept, pertaining to the Account, including:

1.    Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.    All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.    Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.    Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.    All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.    Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from **September 1, 2021 to December 3, 2021**;

7.      Privacy and account settings, including change history; and

8.      Communications between Facebook and any person regarding the account, including contacts with support services and records of actions taken;

B.      All content (whether created, uploaded, or shared by or with the Account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from **September 1, 2021 to December 3, 2021**;

C.      All content, records, and other information relating to communications sent from or received by the Account from **September 1, 2021 to December 3, 2021**, including but not limited to:

1.      The content of all communications sent from or received by the Account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2.      All records and other information about direct, group, and disappearing messages sent from or received by the Account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3.      All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4.      All associated logs and metadata;

D.      All content, records, and other information relating to all other interactions between the Account and other Instagram users from **September 1, 2021 to December 3, 2021**, including but not limited to:

1.      Interactions by other Instagram users with the Account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2.      All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3.      All contacts and related sync information; and

4.      All associated logs and metadata;

E.      All records of searches performed by the account from **September 1, 2021 to December 3, 2021**; and

F.      All location information, including location history, login activity, information geotags, and related metadata from **September 1, 2021 to December 3, 2021**.

Facebook is hereby ordered to disclose the above information to the government within **deadline required by investigation, up to 14 days** days of issuance of this warrant.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of Title 18 United States Code (U.S.C) 922(g)(1) Felon in Possession of a Firearm and Title 21 USC 841(a)(1) Possession with the Intent to Distribute Marijuana, those violations involving Daquarious Blackwell aka Daquarious Rander and occurring after September 1, 2021, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)    Evidence indicating acquisition and disposition of firearms, and unlawful of possession of firearms by prohibited individuals;

(b)    Evidence indicating acquisition and distribution of marijuana or other controlled substances;

(c)    Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

(d)    Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

(e)    The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH INSTAGRAM ACCOUNT **debo___103** THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK, INC. )<br>)<br>)<br>)<br>)<br>)<br>) | No.  4:21 MJ 8586 SRW<br><br>**FILED UNDER SEAL**<br><br>SIGNED AND SUBMITTED TO THE COURT FOR<br>FILING BY RELIABLE ELECTRONIC MEANS |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, ATF Special Agent Sean Becker, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram account that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc. ("Facebook"), an electronic communications service and/or remote computing service provider headquartered at 1601 Willow Road in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since July

2014.  Before joining ATF, I was employed as a Police Officer and Narcotics Detective for the St. Louis County Police Department for approximately seven and a half years.  I am currently assigned to the ATF St. Louis Field Office.  I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator's Training Program, the St. Louis County and Municipal Police Academy, and the ATF National Academy's Special Agent Basic Training course.  I am also a graduate of the Drug Enforcement Administration Taskforce Agent Basic training course.  As an ATF Special Agent, I have received formal and informal training in federal firearms and drug laws.  I have written affidavits for search warrants and complaints that have yielded evidence of state and federal criminal violations.  Pursuant to 18 U.S.C. § 3051, I am empowered to enforce criminal laws of the United States.

      3.      This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

      4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 922(g)(1) (Felon in Possession of a Firearm); Title 21, United States Code, Section 841(a)(1) (Possession with the Intent to Distribute Marijuana); and Title 18, United States Code, Section 924(c) (Possession of a Firearm in Furtherance of a Drug Trafficking Crime) by Daquarious Blackwell a/k/a Daquarious Rander. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes further described in Attachment B.

## PROBABLE CAUSE

      5.      On October 28, 2021, Bureau of Alcohol, Tabacco, Firearms, and Explosives (ATF) Special Agent Becker was monitoring publicly open social media accounts for active Crime

Gun Intelligence in the St. Louis, Missouri area, when he located an individual believed to be Daquarious Blackwell also known as Daquarious Rander, associated with the Instagram account "**debo__103**" with the name "Gip B3". Special Agent Becker began monitoring the social media account due to numerous photos and videos of suspected firearms being posted to this Instagram account storyline as well as indications that the firearms were possessed in the St. Louis area.

6.      Special Agent Becker contacted St. Louis Metropolitan Police Department (SLMPD) ATF Task Force Officer (TFO) Weite about the videos and Instagram profile to attempt to identify the account holder. TFO Weite utilizing Crime Matrix, an electronic law enforcement data base that catalogs known contact information, social media, and other information and connects that information to individuals, as well as a previous booking photo was able to identify the primary photographs from the account as Daquarious Blackwell a/k/a Daquarious Rander. Special Agent Becker compared the two facial images of Blackwell as well as his California Driver's License taken under the name Daquarious Rander and positively identified him as the male subject primarily associated with the Instagram account "**debo__103**".

7.      My review of a record check of Blackwell's criminal history revealed the alias of Daquarious Rander and that Blackwell was convicted on November 5, 2015 in the United States District Court for the Eastern District of Missouri for Conspiracy to Distribute Cocaine and Marijuana in Case No. 4:14-CR-345-ERW-DDN. In that case, three of among Blackwell's ten co-defendants had the last name of "Rander." On November 5, 2015, the U.S. District Court for the Eastern District of Missouri sentenced Blackwell to 28 months in prison followed by three years of supervised release. According to the docket in 4:14-CR-345, Blackwell's supervision following his release from prison was transferred to the Central District of California in August 2017. According to the transfer of jurisdiction order, Blackwell's supervision spanned from March 24,

3

2017 to March 23, 2020. Based on this conviction alone, Blackwell was not permitted to possess firearms after November 5, 2015.

8.       In the United States District Court for the Central District of California, Blackwell's supervised release was revoked in November 2017 and Blackwell was sentenced to twelve months and a day in the Bureau of Prisons. In that same case, Blackwell's supervised release was again revoked in April 2019, and the district court sentenced Blackwell to nine months in prison. In the petition to revoke Blackwell's probation, the U.S. Probation Officer alleged that Blackwell traveled to Missouri without authorization and that Blackwell admitted to using marijuana, which was confirmed by a positive drug test.

9.       On or about November 4, 2021, a video was posted to Blackwell's Instagram account storyline of what appeared to be approximately ten (10) pounds of suspected marijuana in freezer style zip lock bags along with the tag of three (3) emoji arrows with cellphones to reply to the video.



10.     A federal grand jury in Eastern District of Missouri returned an indictment against Robert Kinney, charging him with conspiracy to distribute controlled substances and possession of a firearm in furtherance of a drug-trafficking crime stemming from a July 28, 2021 traffic stop. Robert Kinney has not yet been arrest on that indictment. On or about November 5, 2021, Robert Kinney, posted a photograph to his Instagram storyline of him and Blackwell inside what appeared to be a Penn Station Restaurant and Blackwell is holding what appeared to be a Glock pistol with gold accented pistol accessories. Blackwell is tagged in the photo under his Instagram username "debo__103".



11.     On or about November 9, 2021, a video was posted to Blackwell's Instagram account storyline of what appeared to be a hotel room safe that contained the same Glock pistol with gold accents. The video was tagged with "Glock 30".



12.     Also on or about November 9, 2021, a video was posted to Blackwell's Instagram account storyline of what appeared to be some nachos from the restaurant "Tin Roof" in St. Louis, Missouri and the restaurant was tagged in the video by name and location. I searched for Tin Roof's website (https://www.tinroofstlouis.com/) and the website only lists one restaurant location, specifically 1000 Clark Avenue "near Busch Stadium" in downtown St. Louis.

13.     Approximately 1 hour later, a video of a black individual driving a Hyundai vehicle was posted and the driver was holding what appeared to be the same Glock pistol with gold accent pieces.  The driver proceeded to fire approximately five rounds from the Glock pistol out the driver side window towards what appeared to be a grass hill as the vehicle traveled down the roadway. The individual in the video had on distinct purple colored sweatpants with unique multi-colored print and "crowns" on the pants in the video and he referred to the firearm as a "Glock".



14.    On or about November 11, 2021, a photograph was posted to Blackwell's Instagram account story line of what appeared to be Blackwell holding what appeared to be a pistol and another unknown black male holding what appeared to be an AR style pistol and another unknown possible pistol.  At Blackwell's feet appeared to be approximately three (3) pounds of suspected marijuana in zip lock bags.  Blackwell is tagged in the post with his Instagram name "@debo__103" and he is wearing the same unique purple sweat pants observed in the video of the individual discharging the Glock firearm from a moving vehicle on or about November 9, 2021.



15.     On November 11, 2021, TFO Weite contacted Tin Roof to attempt to obtain video of Blackwell inside the restaurant.  Tin Roof was able to provide video from the south parking lot, which showed a small sedan arriving at approximately 5:11 PM on November 9, 2021 and parking in the rear parking lot of the restuarant. What appeared to be a dark complected male and dark complected female exited the vehicle and walked towards the Tin Roof. The male driver had a similar physical description as Blackwell and appeared to be wearing sweatpants with a similar style print as observed on the video of the shooting and other photographs of Blackwell.



16.     On or about November 24, 2021, several photographs were posted to Blackwell's

Instagram account page of what appeared to be Blackwell holding an AR style pistol with a high

capacity magazine inserted in the pistol. On the open dust cover of the suspected pistol "7.62

39MM" could be observed printed on the interior portion of the dust cover with the pistol's bolt

exposed as well.



17.     On or about November 26, 2021, a video was posted to Blackwell's Instagram account story line of what appeared to be a court document sent to the subscriber in reference to a search warrant that was executed by San Bernardino County, California for electronic communication pertaining to "Daquarious Desean Rander DOB: 05/11/94" and executed on March 11, 2021 by Officer Cerritos.



18.     Special Agent Becker reviewed SLMPD Report 21016533 which documented a law enforcement encounter with Blackwell and SLMPD on April 23, 2021. On April 23, 2021, SLMPD officers pulled over Blackwell for failure to signal while operating a 2021 Nissan Sentra bearing California temporary tag "BL53K14" in north St. Louis, Missouri.  After the vehicle pulled into the McNeal's Superette Package Liquor parking lot, the officer's noted two additional passengers in the vehicle. Blackwell proceeded to exit the vehicle and a clear plastic bag containing suspected cocaine fell to the ground from Blackwell's left front pocket. Blackwell then ignored officer's verbal commands to cease any further movement and retrieved the suspected drugs from the ground and re-entered the vehicle. An officer attempted to drive stun Blackwell with a taser, however it was ineffective at stopping Blackwell who then placed the vehicle in drive and fled

from the traffic stop. Officers followed the vehicle until it came to stop in front of 5939 Sherry Avenue in St. Louis, MO where all the occupants then fled on foot. Blackwell was able to escape apprehension on this date and officers located the same plastic bag containing cocaine on the driver side floorboard. The substance was later analyzed by the SLMPD Laboratory, and it revealed the substance to be 23.44 grams of cocaine base. Blackwell is currently wanted by SLMPD for Drug Trafficking 2nd Degree.

19.     A preservation request for Blackwell's Instagram account was sent to Facebook Incorporated on December 2, 2021.

## BACKGROUND CONCERNING INSTAGRAM[1]

20.     Instagram is a service owned by Facebook, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

21.     Facebook collects basic contact and personal identifying information from users during the Instagram registration process.  This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account

---

[1] The information in this section is based on my training and experience, and on information published by Facebook on its website and its Instagram website, including, but not limited to, the following webpages: "Data Policy," available at https://help.instagram.com/519522125107875; "Information for Law Enforcement," available at https://help.instagram.com/494561080557017; and "Help Center," available at https://help.instagram.com.

number, and other personal identifiers.   Facebook keeps records of changes made to this information.

22.     Facebook also collects and retains information about how each user accesses and uses Instagram.   This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

23.     Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time.   Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

24.     Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account.   Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality.   For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service.   Facebook maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Facebook and third-party websites and mobile apps.

25.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers).   Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their

posts, and "restrict" users to hide certain activity and prescreen their comments.  Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

26.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Facebook to access the contact lists on their devices to identify which contacts are Instagram users.  Facebook retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions.  Users can similarly allow Facebook to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

27.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings.  Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

28.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos.  Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location.  These appear as posts on the user's profile.  Users can remove posts from their profiles by deleting or archiving them.  Archived posts can be reposted because, unlike deleted posts, they remain on Facebook's servers.

29.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram.  Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@").  An Instagram post created by one user may appear on

13

the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

30.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours.   Stories are automatically saved to the creator's "Stories Archive" and remain on Facebook's servers unless manually deleted.   The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

31.     Instagram allows users to broadcast live video from their profiles.   Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

32.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups.   These messages may include text, photos, videos, posts, videos, profiles, and other information.   Participants to a group conversation can name the group and send invitations to others to join.   Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings.   Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot.   Instagram Direct also enables users to video chat with each other directly or in groups.

33.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps.   Instagram collects and

retains payment information, billing records, and transactional and other information when these services are utilized.

34.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag.  Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram.  Facebook retains records of a user's search history and followed hashtags.

35.     Facebook collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Facebook to personalize and target advertisements.

36.     Facebook uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content.  Facebook maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers.  This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

37.     In some cases, Instagram users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

38.    For each Instagram user, Facebook collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

39.    In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

40.    Based on my training and experience, stored data, such as: instant messages, emails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.   Thus, stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation, and can also lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

41.    In addition, the user's account activity, logs, stored electronic communications, and other data retained by Facebook can indicate who has used or controlled the Instagram account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email, messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geolocation, date and time) may be evidence of who used or controlled the account at a relevant time, and device identifiers and IP addresses can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the

geographic and chronological context of access, use, and events relating to the crime under investigation.

42.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.*, information indicating a plan to commit a crime), or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).

43.     Other information connected to the use of an account may lead to the discovery of additional evidence.  For example, accounts are often assigned or associated with additional identifiers such as account numbers, advertising IDs, cookies, and third-party platform subscriber identities.  This information may help establish attribution, identify and link criminal activity across platforms, and reveal additional sources of evidence.

44.     Therefore, Facebook's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

45.     Based on the forgoing, I request that the Court issue the proposed search warrant.

46.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Facebook.  Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

47.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## REQUEST FOR SEALING

48.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

I state under the penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

_12/03/21_
DATE

Sean D. Becker
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and
Explosives (ATF)

Subscribed and sworn to before me by reliable electronic means, in accordance with Federal Rule of Criminal Procedure 4.1 on December 3, 2021.

HONORABLE STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE

18

## <u>ATTACHMENT A</u>

**Property to Be Searched**

This warrant applies to information associated with Instagram account **debo__103** (active on, but not limited to, December 2, 2021) (the "Account"), that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

I.    **Information to be disclosed by Facebook, Inc. ("Facebook")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Facebook, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) [[on December 2, 2021 (reference # 6578115)]], Facebook is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.    All business records and subscriber information, in any form kept, pertaining to the Account, including:

1.    Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.    All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.    Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.    Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.    All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.    Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from **September 1, 2021 to December 3, 2021**;

7.    Privacy and account settings, including change history; and

8.    Communications between Facebook and any person regarding the account, including contacts with support services and records of actions taken;

B.    All content (whether created, uploaded, or shared by or with the Account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from **September 1, 2021 to December 3, 2021**;

C.    All content, records, and other information relating to communications sent from or received by the Account from **September 1, 2021 to December 3, 2021**, including but not limited to:

1.    The content of all communications sent from or received by the Account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2.    All records and other information about direct, group, and disappearing messages sent from or received by the Account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3.    All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4.    All associated logs and metadata;

D.    All content, records, and other information relating to all other interactions between the Account and other Instagram users from **September 1, 2021 to December 3, 2021**, including but not limited to:

1.    Interactions by other Instagram users with the Account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2.    All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3.    All contacts and related sync information; and

4.    All associated logs and metadata;

E.      All records of searches performed by the account from **September 1, 2021 to December 3, 2021**; and

F.      All location information, including location history, login activity, information geotags, and related metadata from **September 1, 2021 to December 3, 2021**.

Facebook is hereby ordered to disclose the above information to the government within **deadline required by investigation, up to 14 days** days of issuance of this warrant.

**II.      Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and/or instrumentalities of violations of Title 18 United States Code (U.S.C) 922(g)(1) Felon in Possession of a Firearm and Title 21 USC 841(a)(1) Possession with the Intent to Distribute Marijuana, those violations involving Daquarious Blackwell aka Daquarious Rander and occurring after September 1, 2021, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)      Evidence indicating acquisition and disposition of firearms, and unlawful of possession of firearms by prohibited individuals;

(b)      Evidence indicating acquisition and distribution of marijuana or other controlled substances;

(c)      Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

(d)      Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

(e)      The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

## **CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)**

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by Facebook, Inc. ("Facebook"), and my title is _____.  I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of Facebook.  The attached records consist of _____ [[**GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)**]].  I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Facebook, and they were made by Facebook as a regular practice; and

b.      such records were generated by Facebook's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Facebook in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Facebook, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                                        Signature